IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John Portee, Jr., #36401, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 2:07-945-PMD-RSC |
| v. ) | |
| ) | |
| NFN Felder, Officer at Alvin S. Glenn ) | |
| Detention Center; NFN Washington, ) | **ORDER** |
| Officer; NFN Daniels, Officer; NFN ) | |
| Haskins, Officer; NFN Waters, Sergeant; ) | |
| NFN Karn, Sergeant; NFN Moody, ) | |
| Lieutenant; NFN Refo, Captain; and NFN ) | |
| Higgins, Captain, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court upon the recommendation of United States Magistrate Judge Robert S. Carr that Defendants' Motion for Summary Judgment be granted except as to the failure to protect claim against Defendants Washington, Daniels, and Haskins in their individual capacities. The record contains the report and recommendation (the "R&R") of Magistrate Judge Carr, which was made in accordance with 28 U.S.C. §636(b)(1)(B). Plaintiff filed timely objections to the R&R, as did Defendants Washington, Daniels, and Haskins.

**BACKGROUND**

Although the Magistrate Judge accurately detailed the facts of this case, for the sake of completeness, they will be included herein. Plaintiff John Portee, Jr. ("Plaintiff" or "Portee") filed this action pursuant to 42 U.S.C. § 1983 on or about April 6, 2007. Although he is now a prisoner, at the time of the incidents in question, he was a pretrial detainee. He filed suit against Officers Felder, Washington, Daniels, and Haskins, Sergeants Waters and Karn, Lieutenant Moody, and Captains Refo and Higgins. As Magistrate Judge Carr noted, all Defendants were correctional

officers employed at the Alvin S. Glenn Detention Center in Columbia, South Carolina, where Plaintiff was a pretrial detainee when the complained of events occurred. (*See* R&R at 2.)

In his Verified Complaint, Plaintiff asserts that another inmate was placed in his cell, despite the fact that both Plaintiff and Fred Ross, the other inmate, told Officers Daniels, Haskins, and Washington that if the inmates were placed in a cell together, they would immediately fight. (*See* Compl. at 3.) Plaintiff further alleges in his Complaint that

> The (Officer) Daniels told "Fred Ross" to put his shoes on because we was [sic] going to fight. They [(meaning Officers Daniels, Haskins, and Washington)] opened the door and forced "Fred Ross" in the cell, upon which we immediately started fighting. The three officers watched and laughed the entire time as we fought. After that fight was over with[,] these officers went to another inmate . . . and asked him to fight me and he wouldn't get into any trouble. . . . After the incident Watch Comms. Sgt. Waters and Karn appeared and was [sic] blinded as to what happened and lied to.

(*Id*. at 3-4.) Plaintiff also alleges that both he and inmate Ross were initially denied medical treatment but that "[a]fter an hour or so of me persuading the staff about me needing medical attention, they granted me that request." (*Id*. at 4.) The Complaint further states,

> On the way back from medical I was brutally attacked and assaulted by Officer Washington while handcuffed and shackled in the sally port area of the unit. This assault should be on camera also! He pushed, pulled and gave me blows to assert his authority over me.

(*Id*.) In the relief section of his Complaint, Plaintiff seeks damages and prays that all Defendants be terminated from their employment. (*Id*. at 5.)

Defendants filed a Motion for Summary Judgment on November 15, 2007, including with it several affidavits, incident reports, and medical records pertaining to Plaintiff. Plaintiff was provided with a copy of these documents, and he filed a Response in Opposition to Defendants' motion on January 8, 2008.

Magistrate Judge Carr issued a Report and Recommendation on March 4, 2008, in which he recommended granting Defendants' Motion for Summary Judgment except as to the failure to protect claim for damages against Washington, Daniels, and Haskins in their individual capacities. (*See* R&R at 13.) With respect to this claim, Magistrate Judge Carr stated,

> Here, Plaintiff has sworn under penalty of perjury that both he and Ross told Officers Washington, Haskins, and Daniels that they would fight each other immediately if they were put in the same cell and that, nonetheless, these officers put Ross into Plaintiff's cell and that they immediately assaulted each other. Further, Plaintiff swore that he heard Daniels tell Ross "to put his shoes on because he was going to fight me." Plaintiff affied that the three officers "opened the door and forced Fred Ross into the cell, upon which we immediately started fighting. The three officers watched and laughed the entire time we fought."
> This evidence standing alone is sufficient to support a finding that these three defendants displayed a deliberate or callous indifference to a specific known risk of harm to him as required by Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1979 (1994). Indeed, his version does indicate these defendants engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result." Id. Further, Plaintiff's sworn allegations are sufficient to defeat qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982).

(R&R at 9-10.) However, Magistrate Judge Carr recommended Defendants' Motion for Summary Judgment on all remaining claims be granted. He recommended dismissing Plaintiff's claims against Washington, Haskins, and Daniels in their official capacities "because they are not 'persons' amendable to suit" under § 1983 as they are "the alter ego of the State of South Carolina." (*Id*. at 11.)

In addition, Magistrate Judge Carr recommended granting Washington's Motion for Summary Judgment with respect to Plaintiff's claim that Washington assaulted Plaintiff on the way back from receiving medical attention because "[t]he fact that Plaintiff was uninjured or suffered at most a de minimis injury[] demonstrates that the force used against him was not constitutionally excessive." (*Id*. at 11-12.) It was also recommended that Plaintiff's claim he was denied medical

3

care for an hour "should fail because his medical records demonstrate that he has not established that he had a serious medical need as required to defeat the defendants' motion." (*Id.* at 12.) With respect to Defendants Waters and Karn, the R&R states, "Plaintiff seeks to impose liability on Defendants Waters and Karn because they did not believe Plaintiff's version of how the fight occurred. They should be dismissed as Plaintiff does not enjoy a constitutional right to have his story credited over another's version of the events." (*Id.*) The R&R further states,

> Plaintiff made no allegations in his complaint concerning Defendants Felder, Moody, and Refo, and they should be dismissed on that basis.
> Defendant Higgins is alleged to have failed to respond to Plaintiff's grievance that he was denied recreation. Higgins should be dismissed as Plaintiff does not have a federal right to participate in grievance proceedings at all. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

(R&R at 12.)

## STANDARD OF REVIEW

### A.  Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, Plaintiff's Objections, and Defendants' Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

### B.  Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue

4

for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### A.     Plaintiff's Objections

Plaintiff filed Objections on or about March 11, 2008, in the form of a letter to Magistrate Judge Carr. In his Objections, Plaintiff states,

> The aforesaid officers[] all played an important ro[le] in this situation, if not directly, indirectly what they did or didn't do was the cause and effect, which resulted in my being assaulted by Detainee Ross and the aforementioned officers to the effect of bodily as well as mental abuse, and all of these officers were mentioned in my initial argument that started this case.

(Pl.'s Objections at 1.) He continues, stating, "Officers Felder, Daniels, Washington, Haskins, Sgt. Karn, Sgt. Waters and Lt. Moody[] are all on the same shift." (*Id.*) He further asserts that "it is a

5

well known fact that these officers have been reported for this same behavior before to the Captains mentioned, who obviously did nothing to deter this kind of criminal activity." (*Id*. at 1-2.)

As a preliminary matter, this objection hardly seems specific, and the court is charged with reviewing de novo only those objections that are specific. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (noting that courts have held that *de novo* review may be dispensed with "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations"); *see also Keeler v. Pea*, 782 F. Supp. 42, 43 (D.S.C. 1992). The court will, however, address Plaintiff's objection. Magistrate Judge Carr correctly observed that nowhere in the Complaint does Plaintiff even mention Defendants Felder, Moody, or Refo. (*See* R&R at 12.) Because Plaintiff made no allegations whatsoever against these Defendants, the Magistrate Judge properly recommended dismissing them. Generally speaking, when a plaintiff makes no allegations against a defendant, that defendant is properly dismissed. *See Karafiat v. O'Mally*, 54 Fed. App'x 192, 194 (6th Cir. 2002) (concluding the plaintiff's claims were "simply too vague and conclusory to support a claim under § 1983" when the plaintiffs mentioned only one named defendant in the body of their complaint and "did not present any allegations to reflect the manner in which the defendants violated their rights, or how the defendants were involved in the alleged improper conduct"); *Whaley v. Hatcher*, No. 1:08CV125-01-MU, 2008 WL 1806124, at *1 (W.D.N.C. Apr. 18, 2008) (dismissing defendant Raymond Hamrick, Sheriff, because this defendant was not mentioned in the body of the complaint and because the plaintiff "does not allege any personal conduct or any policy by Defendant Hamrick with regard to the incidents that form the basis of his Complaint"); *Lawson v. State of Commonwealth of Va.*, No. 101CV180, 2002 WL 771901, at *2 (M.D.N.C. March 22, 2002) ("[M]ost of the defendants are not even named in the

body of the complaint. This, alone, constitutes a basis for dismissal as to those defendants.").

While the body of the Complaint does not mention Officer Felder, Lieutenant Moody, or Captain Refo, the court notes that the attachments to Plaintiff's Complaint do contain the names of these individuals. A grievance form complaining of Officer Felder's conduct on October 26, 2006,[1] is attached, and it appears that Lieutenant Moody and Captain Refo signed the jail staff's response to certain grievances Plaintiff filed. The grievance complaining of Officer Felder's conduct has nothing to do with the case *sub judice* and thus does not alter the court's analysis. Furthermore, while it appears Lieutenant Moody and Captain Refo responded to some of Plaintiff's grievances, it is unclear how these two defendants allegedly violated Plaintiff's constitutional rights. The Magistrate Judge thus correctly recommended dismissing these Defendants. *See Clark v. S.C. Dep't of Corr.*, No. 4:07-2840-HMH-TER, 2007 WL 2749641, at *3 (D.S.C. Sept. 20, 2007) ("The Plaintiff's placement of these Defendants in the Complaint's caption and/or 'Parties' section, without any mention of how they are connected to the case is insufficient to state a claim under § 1983."); *see also James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 198 (3d Cir. 2007) (concluding the district court did not err in dismissing the plaintiff's Eighth Amendment claims against certain defendants because the evidence shows he received medical treatment and "he simply has not alleged any facts implicating these officials other than that they responded unfavorably to his later-filed grievances"). Furthermore, the court notes that the fact that Officer Felder and Lieutenant Moody work on the same shift as Officers Daniels, Washington, and Haskins does not, in and of

---

[1] Plaintiff asserts that he named Officer Felder as a defendant in this suit because at the time, he "did not know about being able to pursue a lawsuit on [his] own, nor did [he] know how to obtain one of the packages to proceed against Mr. Felder." (Objections at 2.) As noted herein, this incident is entirely separate from the one in the case *sub judice*.

itself, mean they can be liable on Plaintiff's § 1983 claim.  Plaintiff's objection is without merit.

Plaintiff next states, "I have copies of the grievances that I wrote about these situations[;] they went to Capt. Refo, Capt. Higgins as well as Lt. Moody[;] they all failed to protect me from these individuals[] and should be held responsible."  (Objections at 2.)  Lieutenant Moody's response on the Grievance Form concerning the altercation between Plaintiff and fellow inmate Ross obviously came after the altercation itself, and Captain Higgins' response to the appeal states,

> Inmates can be housed together as long as they are the same classification level and have no keep separates.  Both Officers Haskins and Washington state that all you said was that you did not want a roommate.  Officer Washington who escorted you to medical, states that nothing happened either going to or returning from medical.

(Attachment to Compl.)   As a preliminary matter, Plaintiff does not have a federal right to participate in grievance proceedings.  *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  To the extent he is arguing the grievances reveal that Captain Refo, Captain Higgins, and Lieutenant Moody had notice that Defendants Higgins, Daniels, and Washington were indifferent to Plaintiff's rights and that Refo, Higgins, and Moody failed to take action to prevent such alleged harm, the court disagrees.  While Lieutenant Moody and Captain Higgins did not believe Plaintiff's version of the events, as the Magistrate Judge noted in the R&R, "Plaintiff does not enjoy a constitutional right to have his story credited over another's version of the events."  (R&R at 12.)  In addition, the responses indicate that there was at least some investigation into the events.  Lastly, all of the grievances (with the exception of the wholly-unrelated grievance against Officer Felder) were filed *after* the incident in question.  The court concludes the conduct of Refo, Higgins, and Moody does not rise to the level of a violation of Plaintiff's constitutional rights.  Furthermore, while higher officials may be held liable for the acts of their subordinates if the official is aware of a pervasive, unreasonable risk of harm from an unspecified source and fails to take corrective action as a result

of deliberate indifference of tacit authorization, *see Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), there is no evidence in the record that the Refo, Higgins, and Moody had such knowledge but failed to take corrective action. Plaintiff's objection is without merit.

Lastly, Plaintiff seemingly objects to the Magistrate Judge's determination that Plaintiff's claims against Defendants Washington, Haskins, and Daniels in their official capacities be dismissed. He states that he does not understand what is meant by "in their individual capacities" and inquires as to whether this recommendation means that he would have to "start another suit." (Objections at 2-3.)[2] In *Smith v. Ozmint*, 394 F. Supp. 2d 787, 790 (D.S.C. 2005), this court explained, "[T]he Eleventh Amendment prevents the court from considering claims asserted against the named individuals in their official capacity; however, the Eleventh Amendment does not prevent suits against state officers for money damages to be paid out of the officers' own pockets." The court thus dismissed the § 1983 claims against state employees in their official capacity. *Smith*, 394 F. Supp. 2d at 791; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983");

---

[2]The United States District Court for the Eastern District of Virginia explained the difference between suits in an individual capacity and an official capacity:

> In order to state a claim under § 1983, plaintiff must allege, among other things, that the challenged conduct was committed by a "person" acting under color of state law. States and governmental entities that are considered arms of the State are immune from suit under the Eleventh Amendment and are not "persons" under § 1983. Moreover, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As a result, an "official capacity" suit against a state official for monetary relief is no different from a suit against the State itself. In contrast, a suit against a state official in his or her individual capacity, which seeks to impose personal liability, is not a suit against the State.

*Williams-El v. Dunning*, 816 F. Supp. 418, 420 (E.D. Va. 1993) (some internal quotation marks and citations omitted).

9

*LCS Servs., Inc. v. Hamrick*, 948 F.2d 1281, at *2 (4th Cir. 1991) (unpublished table decision) (concluding that "to the extent the complaint seeks damages from appellees [(state officers)] in their official capacities, it is barred"). Thus, to the extent Plaintiff objects to the Magistrate Judge's determination that Plaintiff's suit against Washington, Daniels, and Haskins in their official capacity cannot proceed, that objection is without merit.

**B.    Objections by Defendants Washington, Daniels, and Haskins**

As noted above, the Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted except as to the failure to protect claim for damages against Washington, Daniels, and Haskins in their individual capacities. (R&R at 13.) Defendants Washington, Daniels, and Haskins object,[3] asserting Plaintiff's failure to protect claim against them in their individual capacities should not go forward. (Defs.' Objections at 2.) Defendants state,

> In the Report and Recommendation, Judge Carr indicates that, based on the Plaintiff's sworn statements, there is a genuine issue of material fact regarding the subjective component of the failure to protect issue. *See*, R&R pg. 10-11. However, the Defendants assert that the Magistrate Judge failed to continue the analysis to its second step, the objective component.

(*Id.*) Defendants assert that in order to satisfy the objective component, a plaintiff must show injury that is sufficiently serious and that Plaintiff has failed to make such a showing in this case. (*Id.* at 2-3.) Defendants state,

> The Magistrate Judge has correctly pointed out in his report and recommendation, that the Plaintiff had no observable injuries as a result of the mutual combat between himself and detainee Ross, and that the Plaintiff was seen by the medical staff approximately an hour later where it was noted that there was "no bruising, edema, or abrasions," and the Plaintiff was given Motrin. *See*, R&R at 6. Again, on page 11 of the report and recommendation, the Magistrate Judge

---

[3]Although the court notes that only Defendants Washington, Daniels, and Haskins object, the court will refer to these objecting Defendants simply as "Defendants."

>noted that the Plaintiff was uninjured, or at most suffered de minimis injuries, from the incidents at issue in this case. *See*, R&R at 11.

(Defs.' Objections at 3.)

As the Magistrate Judge noted in the R&R, because Plaintiff was a pretrial detainee at the time of the incident in question, this court evaluates his § 1983 claim for failure to protect under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Fourth Circuit has noted, however, that "[a]s a practical matter, . . . [the court] do[es] not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim." *Ervin v. Mangum*, 127 F.3d 1099, at *4 (4th Cir. 1997) (citing *Hill v. Nicodemus*, 979 F.2d 987, 990-92 (4th Cir. 1992); *Belcher v. Oliver*, 898 F.2d 32, 33 (4th Cir. 1990)). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious . . . needs of the detainee." *Belcher*, 898 F.2d at 34.

In 1994, the Supreme Court decided *Farmer v. Brennan*, 511 U.S. 825 (1994). In that case, the plaintiff was transferred from a federal correctional institution to a United States penitentiary, where he was placed in the general population. *Farmer*, 511 U.S. at 830. Within two weeks, the plaintiff, a male who exhibited female characteristics, had been beaten and raped in his cell. *Id*. The plaintiff then filed a *Bivens* claim against several officials of the penitentiary and the federal correctional institution, asserting his Eighth Amendment rights had been violated. *Id*. He asserted the defendants were deliberately indifferent to his Eighth Amendment rights because they placed him in the general population despite knowledge that "the penitentiary had a violent environment and a history of inmate assaults, and despite knowledge that petitioner, as a transsexual who projects

11

feminine characteristics, would be particularly vulnerable to a sexual attack" by some penitentiary inmates. *Id.* at 831. The district court granted the defendants' Motion for Summary Judgment, concluding the prison officials were not deliberately indifferent to the plaintiff's safety as they did not have actual knowledge of a potential danger. *Id.* at 831-32. The Seventh Circuit affirmed without opinion, and the Supreme Court granted certiorari due to inconsistent tests concerning deliberate indifference. *Id.* at 832.

The Court first indicated that prison officials have a duty to protect inmates from violence "at the hands of other prisoners." *Id.* at 833. However, the Court continued,

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to health or safety . . . .

*Id.* at 834 (internal quotation marks and citations omitted). Thus, a prison official is liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Defendants cite *Ervin v. Mangum*, 127 F.3d 1099 (4th Cir. 1997) (unpublished table decision), to support their position that Plaintiff has not established the objective prong of *Farmer*. In *Ervin*, the pretrial detainee plaintiff brought suit alleging in part that the defendants "failed to take sufficient precautions to protect him from assault." *Ervin*, 127 F.3d at *1. The plaintiff in that case

had been arrested on marijuana charges and brought to the Raleigh County Jail to await a transfer. *Id*. Within a few minutes of being placed in the cellblock, the plaintiff was assaulted by a fellow inmate, and "the one punch that he landed resulted in severe facial injuries, including two fractures to [the plaintiff's] face and a fracture to one of his eye sockets." *Id*. The plaintiff's eyes began swelling immediately, and he bled from his nose and eyes. *Id*. When he received medical treatment, he remained in the hospital for seven days and underwent reconstructive surgery. *Id*. at *2. The district court denied both parties' motions for summary judgment, rejecting the defendants' argument that the plaintiff failed to show the violation of any clearly established or statutory right. *Id*.

On appeal, the defendants argued the district court erred in denying their motion for summary judgment on the plaintiff's failure to protect claim. *Id*. at *3. The Fourth Circuit agreed and concluded the defendants were entitled to qualified immunity on the failure to protect claim. *Id*. The court noted that because the plaintiff was a pretrial detainee, the claim was governed by the Due Process Clause of the Fourteenth Amendment as opposed to the Eighth Amendment's prohibition against cruel and unusual punishment. *Id*. at *4. The court further stated, however, "As a practical matter, . . . we do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim." *Id*. (citing *Hill v. Nicodemus*, 979 F.2d 987, 990-92 (4th Cir. 1992); *Belcher v. Oliver*, 898 F.2d 32, 33 (4th Cir. 1990)). The passage Defendants in the case *sub judice* point to, however, states,

> In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court defined "deliberate indifference" for prisoner litigation under the Eighth Amendment. The Court began by observing that a prison official's "deliberate indifference" to "a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. at 828. An Eighth Amendment claim must articulate both an objective and subjective component. *Id*. at 834. To satisfy the objective component, the plaintiff

13

> must show that an injury is sufficiently serious. . . .

*Id*. The Fourth Circuit concluded the plaintiff's injuries were sufficiently serious but ultimately concluded the defendants were entitled to qualified immunity because the plaintiff was unable to establish the subjective component. *Id*. at *4-5.

Although the court in *Ervin* stated that "[t]o satisfy the objective component" of a pretrial detainee's claim for failure to protect required the plaintiff to show "that an injury is sufficiently serious," the question before the court in the case *sub judice* was not the question before the court in *Ervin*. There was no question in *Ervin* that the plaintiff had suffered a serious injury. In examining the record in the case *sub judice*, however, while the Plaintiff complained of pain, the evidence reveals there was no bruising, edema, or abrasions, and Plaintiff received Motrin. Assuming Plaintiff has suffered de minimis injury, the question for the court is whether Plaintiff is required to show more than a de minimis injury in order to proceed with his failure to protect claim pursuant to the Due Process Clause of the Fourteenth Amendment.

In *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997), a pretrial detainee filed an excessive force suit against a police detective; the detainee alleged that the detective inserted the tip of his pen a quarter inch into the plaintiff's nose, threatening to rip it open, and that the detective slapped the plaintiff across the face with "medium force," scraping the plaintiff's face with his fingernails. *Riley*, 115 F.3d at 1161. The court stated, "An injury need not be severe or permanent to be actionable under the Eighth Amendment, but it must be more than *de minimis*. We think this same rule applies to excessive force claims brought by pre-trial detainees." *Id*. at 1167; *see also Taylor v. McDuffie*, 155 F.3d 479 (4th Cir. 1998) (concluding the district court did not err in granting the defendants' motion for summary judgment in the context of a pretrial detainee's claim of excessive

force where his injuries were de minimis).

Both *Riley* and *Taylor* are excessive force cases, but the case *sub judice* is a failure to protect case. The Defendants have not cited, and the court has not found, a Fourth Circuit opinion indicating that if a pretrial detainee plaintiff suffers only de minimis injuries, his failure to protect claim fails. While Defendants did cite *Ervin*, 127 F.3d 1099, to support their argument, this unpublished opinion is not persuasive because it did not address the question now before the court. Furthermore, the court in *Ervin* stated, "To satisfy the objective component, the plaintiff must show that an injury is sufficiently serious." *Ervin*, 127 F.3d 1099, at *4. The actual language from *Farmer* states something slightly different: "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.[4] Indeed, the United States Court of Appeals for the Seventh Circuit stated,

---

[4]Defendants also cited three cases from the United States District Court for the District of South Carolina to support their argument. The citation Defendants provide for *Barr v. Battiste*, No. 2:06-2209-CMC-RSC, 2007 WL 1704884 (D.S.C. May 7, 2007), is a citation to a Report and Recommendation written by Magistrate Judge Carr. This R&R was adopted by Judge Currie with the exception of the recommendation that the action be deemed a strike. This court recognizes that the Report and Recommendation stated that the plaintiff "has not shown that he was denied the minimal civilized measure of life's necessities as required by *Farmer* and its progeny" because "[i]t does not appear that [the plaintiff] received any injury, certainly no more than a *de minimis* injury, as a result of his two fights or assaults." *Barr*, 2007 WL 1704884, at *4. The language in *Barr* looks very much like the language in *Ervin*.

Defendant also cites *Johnson v. South Carolina Department of Corrections*, No. 3:06-2062-CMC-JRM, 2007 WL 904826 (D.S.C. Mar. 21, 2007), for support. In that case, the defendants argued the plaintiff "fail[ed] to establish a failure to protect claim because [the plaintiff] admits that no harm came from any alleged attempt of another inmate to harm him." *Johnson*, 2007 WL 904826, at *8. The court concluded the plaintiff's "claims fail because he has not shown anything more than de minimis injury from the alleged attacks." *Id.* at *9 (citing *Norman v. Taylor*, 25 F.3d 1259, 1263-64 (4th Cir. 1994)). The claim in *Norman*, however, was one of excessive force. *See Norman*, 25 F.3d 1259.

Lastly, Defendants cite *Sullivan v. Coleman*, No. 9:06-1588-MBS, 2006 WL 3759757 (D.S.C. Dec. 18, 2006). In that case, the court concluded the plaintiff failed to exhaust his administrative remedies. *See Sillivan*, 2006 WL 3759757, at *1,6. Furthermore, the court stated,

15

"To state a failure to protect claim, a plaintiff-inmate must allege that (1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) defendant-officials acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (internal quotation marks omitted).  As the Magistrate Judge noted in the R&R, the evidence presented by Plaintiff "standing alone is sufficient to support a finding that [Defendants Washington, Haskins, and Daniels] displayed a deliberate or callous indifference to a specific known risk of harm to [Plaintiff] as required by Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1979 (1994)." (R&R at 10.)  The court thus concludes that Defendants' objections are without merit.

---

"Even if it were assumed, for the sake of discussion, that both Defendants were deliberately indifferent, plaintiff's injuries are *de minimis*." *Id.* at *7.  The court also cited *Norman* to support the assertion that "[b]ecause plaintiff's injuries were *de minimis*, no constitutional violation can be found even if defendants acted with deliberate indifference." *Id.*

      While the court acknowledges that the failure to protect claims in these three cases failed at least in part because the plaintiff's injuries were de minimis, the court does not find these cases persuasive.  First, the language in *Barr* looks very much like the language in *Ervin* that seemingly misstates the language of *Farmer*.  Second, in *Sullivan*, the holding of the court was that the plaintiff failed to exhaust his administrative remedies; the discussion about the plaintiff's injuries was an alternative holding.  Third, these cases seem to rely on the Fourth Circuit's opinion in *Norman*, which was not a failure to protect case.  The court declines to follow these cases and instead relies on the specific language in the Supreme Court's opinion in *Farmer*.

16

## **CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants' Motion for Summary Judgment is denied with respect to the failure to protect claim for damages against Defendants Washington, Daniels, and Haskins in their individual capacities. Defendants' Motion for Summary Judgment is granted with respect to all other claims.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**May 28, 2008**